# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38687

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, August 2012 Term |
| | ) | |
| Plaintiff-Respondent, | ) | 2012 Opinion No. 142 |
| | ) | |
| v. | ) | Filed: December 11, 2012 |
| | ) | |
| PHILIP L. DIETER, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendant-Appellant. | ) | **SUBSTITUTE OPINION, THE** |
| | ) | **COURT'S PRIOR OPINION** |
| | ) | **DATED SEPTEMBER 17, 2012** |
| | ) | **IS HEREBY WITHDRAWN.** |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. George D. Carey, District Judge.

District court order denying dismissal, affirmed.

Bray Family Law, Boise, for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

———————————————

BURDICK, Chief Justice

This case arises out of an appeal of the district court's refusal to grant a dismissal following an evidentiary hearing in 2011. In 1988, Philip Dieter (Dieter) entered a plea agreement with the State in which he agreed to plead guilty to lewd conduct in exchange for the State's dismissal of two related charges. Subsequently, the court entered an Order of Withheld Judgment and Order of Probation. Following an amended order that enlarged the terms of probation, the district court dissolved and terminated probation in 1992. However, it did not dismiss the case. Dieter argues that the district court should be required to dismiss the case because the initial order contained a clause that stated the case would be dismissed if Dieter fully

1

complied with his probation terms. He also argues that the district court had no authority to deny the dismissal. We affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the presentence report for the 1988 charge, Dieter began a relationship with the victim in 1986. At the time, he was 31 years old and the victim was 15 years old. According to Dieter, he knew the victim's family well and dated the victim's older sister until she moved out of state. The victim's parents had essentially abandoned the family as they were driving trucks on long-haul routes, and the victim's brother was physically abusive towards the victim. Dieter claims he originally felt that he was protecting her from a bad situation and trying to keep her in school. This conforms with the victim's original statements; she stated that "[m]y parents were on the road driving a truck, my brother was violent and I was worried about food and how to take care of myself." In August of 1986, Dieter's relationship with the victim turned sexual, and did not end until over a year later when the victim was living full-time with foster parents. During this period, Dieter also took nude photos of the victim. According to Dieter, he was in love with the victim, and at one point asked her to marry him when she finished high school.

On July 12, 1988, a grand jury indicted Dieter on three charges: lewd conduct with a minor under sixteen, infamous crime against nature, and sexual abuse of a child under sixteen. Dieter entered into a plea agreement with the State and pled guilty to lewd conduct in exchange for the State dismissing the other two charges. On December 16, 1988, the district court, the Honorable Robert G. Newhouse presiding, entered an Order Withholding Judgment and Order of Probation. The joint order decreed a five year period of probation and withheld judgment. The order also stated that the case would be dismissed if Dieter fully complied with the terms of his probation.

The district court entered a Second Amended Order Withholding Judgment on June 21, 1990. This order continued the probation but enlarged the terms to allow Dieter to have full contact with minors in public places and with his new nuclear family.

On August 17, 1992, the State filed a motion for a bench warrant alleging that Dieter had violated several of the terms of his probation. However, the record contains no information regarding the disposition of the alleged probation violations, and there has never been a judicial finding that Dieter violated the terms of his probation. Dieter subsequently filed a motion to dissolve his probation on September 22, 1992. On October 9, 1992, the district court entered an

Order Terminating Probation, Dissolving Order of Probation, and Entering Order Withholding Judgment. One year remained before the expiration of the probation, but the court found that Dieter had "substantially complied" with the terms of probation.

On September 16, 1999, Dieter filed a motion for expungement. It was denied on December 30, 1999. Almost eleven years later, on December 14, 2010, Dieter filed a pro se motion to dismiss his case "pursuant to the Orders issued . . . on December 16, 1988 and on October 9, 1992." The court then issued a "Notice of Intent to Deny Motion to Dismiss." It stated that I.C. § 19-2604(1) requires that defendants comply with the terms and conditions of probation "at all times" and make a "satisfactory showing" that dismissal would be "compatible with the public interest" for the court to dismiss the case. Based upon the partial record provided to the court that did not contain the disposition of the motion for the bench warrant, the court found that Dieter had not shown that he had complied with his probation at all times and had not made a satisfactory showing that dismissal was compatible with the public interest.

Dieter then retained counsel, requested an evidentiary hearing, and filed a "Memorandum" on January 28, 2011, responding to the court's notice. In the memorandum, Dieter claimed that the alleged probation violations were "in dispute" in 1992, and were "resolved by the court's order" when it terminated his probation. Dieter claimed that the termination was due in part to several affidavits regarding the alleged violations that were submitted by him and others on his behalf. Dieter's most significant argument with respect to the public interest issue was that he had moved to Montana in 1999, and Montana had recently passed a new statute that required anyone who had a sex offense on his record to register that offense. This registration would result in automatic termination of Dieter's hunting and fishing license and his right to vote. Dieter claimed that he hunted and fished to support his family. However, as a result of several accidents he suffered while working, he was significantly handicapped, had trouble balancing while walking, and thus had to hunt with a companion.

At the conclusion of the evidentiary hearing, Dieter asked the court to expunge or dismiss the case. The court found that, while Dieter appeared to have complied with the terms of his probation, dismissal was not compatible with the public interest and entered an order denying the motion to dismiss. Dieter filed a motion to reconsider which was denied. Dieter timely appealed.

## II. ISSUES ON APPEAL

1. Whether the district court lacked jurisdiction or discretion to deny Dieter's motion to dismiss.
2. Whether the district court erred when it denied Dieter's motion to dismiss.

## III. STANDARD OF REVIEW

"Whether a court lacks jurisdiction is a question of law that may be raised at any time, and over which appellate courts exercise free review." *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004) (citation omitted). A decision to deny a motion to dismiss is discretionary: "[i]f a sentence has been suspended or withheld, I.C. § 19-2604(1) gives the district court discretion to 'terminate the sentence or set aside the plea of guilty or conviction of the defendant, and finally dismiss the case and discharge the defendant.'" *State v. Wiedmeier*, 121 Idaho 189, 191, 824 P.2d 120, 122 (1992). The decision of the district court will be upheld if the court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *State v. Gurney*, 152 Idaho 502, 503, 272 P.3d 474, 475 (2012).

## IV. ANALYSIS

### A. The district court had jurisdiction and discretion to deny Dieter's motion to dismiss.

Dieter argues that the district court lacked jurisdiction or discretion to amend or modify the final orders entered in 1988, 1990, and 1992, and cites to *State v. Hartwig*. 150 Idaho 326, 328, 246 P.3d 979, 981 (2011). There, the district court entered an order releasing Hartwig from his duty to register as a sex offender. The prosecutor subsequently filed a motion for reconsideration, but it was untimely filed after the period for reconsideration had lapsed, and thus the district court had no jurisdiction to amend the order. *Id.* Here, the State argues that the district court had the authority to deny Dieter's motion to dismiss because the court did not actually amend or modify any of the final orders. The actual issue of dismissal was never ruled on by Judge Newhouse, and the 1992 final order only terminated the fifth year of probation, dissolved the order of probation, and stated that the judgment would remain withheld.

4

The State is correct. *Hartwig* does not apply because Dieter's case was not dismissed by the 1992 order. Under I.C.R. 48(b), an order of dismissal must state the reasons for dismissal.[1] The order does not state reasons for a dismissal. More importantly, it simply does not dismiss the case. The original 1988 Order Withholding Judgment stated that the case would be dismissed if Dieter "fully complied with the terms of his probation." Similarly, the 1992 order referenced dismissal when it stated that "upon a proper showing of compliance . . . this action would be dismissed." However, it did not dismiss the case. Thus, the district court did not amend or modify a final order when it denied Dieter's 2010 motion to dismiss, and we therefore hold that the district court had jurisdiction and discretion to deny Dieter's 2010 motion to dismiss.

**B. The district court did not err when it denied Dieter's motion to dismiss.**

The relevant language of I.C. § 19-2604(1) states that if a defendant has "at all times complied with the terms and conditions" of probation, a court "may, if convinced by the showing made that there is no longer cause for continuing the period of probation, and if it be compatible with the public interest, terminate the sentence . . . and finally dismiss the case . . . ."[2] It is true that the 1988 order stated that the case would be dismissed when the probation term expired or was terminated, and there was a written showing that Dieter had fully complied with the terms of his probation. Also, despite the State's firm belief otherwise, the 1992 order actually uses the word "dismissed" when it references the original order. So it is understandable why Dieter may have believed the case was dismissed as a result of the 1992 order. However, the plain language of the order makes it clear that it only terminated the fifth year of probation, dissolved the original and amended probation orders, and withheld judgment. Additionally, it appears that Judge Newhouse believed that Dieter did not fully comply with the probation terms and therefore decided not to dismiss the case. His use of the word "substantially" in relation to Dieter's compliance lends credence to this argument: "[a]pproximately four years of the five year probation has elapsed and [Dieter] has substantially complied with the said Order." In reference to the 1989 version of I.C. § 19-2604(1), this Court has specifically stated that:

---

[1] "When a court dismisses a criminal action upon its own motion or upon the motion of any party under this rule, it shall state in the order of dismissal its reasons for such dismissal."

[2] This is the language from the older version of §19-2604(1). *See* S.L. 1989, ch. 305, § 1. This section was amended effective July 1, 2011.

> [t]he statute requires that defendant has 'complied' with his conditions of probation. It does not state that he must have obeyed to the satisfaction of the sentencing court or *substantially complied*. Finally, it states that he must have at all times complied with 'the terms and conditions upon which he was placed on probation.' Compliance with most of the terms, or the major terms, is not sufficient.

*State v. Thompson*, 140 Idaho 796, 798, 102 P.3d 1115, 1117 (2004), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011) (emphasis added).

Idaho Code section 19-2604(1) requires the defendant to make a showing that dismissal is compatible with the public interest. Even though the district court's 2011 memorandum concerning Dieter's motion to dismiss stated that Dieter appeared to have complied with the terms of his probation, it also stated that dismissal was not compatible with the public interest. It said "the public interest requires the continued protection afforded by the original guilty plea" and referenced the fact that the 1988 psychosexual evaluation stated that Dieter had been "frankly dishonest about his sexually deviant interests" and displayed a "complete lack of motivation towards treatment focused upon the rehabilitation of sexual offenders." The court was also concerned that the doctor who wrote the evaluation believed that Dieter was at risk for further misbehavior with minors, his expressed remorse seemed superficial, and he was suspicious of therapy. Thus, despite Dieter's clean record and productive work history since 1988, the district court held that dismissal was not compatible with the public interest.

Dieter focuses on the district court's determination that "[t]he public interest requires the continued protection afforded by the original guilty plea." He argues that there are no current facts that support the district court's conclusion and points out that 25 years have passed since the original offense and the denial of the motion for dismissal. Additionally, he argues that in 1988 Judge Newhouse considered the potential for rehabilitation noted in the psychosexual evaluation, and that the district court ignored his successful rehabilitation when it denied his motion to dismiss. He also argues that the district court ignored the fact that there is a strong public interest argument to dismiss the case as he will lose his license to hunt and fish and his ability to vote if the case is not dismissed. Finally, he states that the district court's holding was an abuse of discretion, and "[e]stablishing a guilty plea as the 'protection standard' for the public would create an absolute standard that could not be met" and would "nullify and negate" the standards of I.C. § 19-2604(1). The State contends that Dieter's argument regarding the guilty

6

plea is "without merit" because the district court also considered the information in the psychosexual evaluation.

The text of Idaho Code section 19-2604 contains no explicit guidance on what constitutes the public interest. We understand that the public interest is served by rehabilitation of the individual, but in addition, a petitioner must present how there is an interest compatible with the public interest served by dismissal. Some guidance can be found in the private attorney general doctrine. Under that doctrine, attorney fees may be awarded to parties that meet a three-part test articulated in *Heller v. Cenarrusa*. 106 Idaho 571, 577–78, 682 P.2d 524, 530–31 (1984). Included in that test is a determination of the societal importance of the public policy indicated by the litigation. *Id.* In *State v. Hagerman Water Right Owners, Inc.*, this Court held that if the plaintiff seeking to use the doctrine "is protecting its own economic interests, it cannot claim that it is a public interest litigant. It is not enough that the action results in benefits to the public; it must be pursued with the purpose of benefiting the public." 130 Idaho 718, 726, 947 P.2d 391, 399 (1997). Put into this context, public interest refers to that which the public or the community at large has an interest. Here, Dieter argues that there is a strong public interest argument to dismiss the case as he will lose his license to hunt and fish and his ability to vote if the case is not dismissed. These consequences would directly impact Dieter's private interest, but not the public interest.

 "If a sentence has been suspended or withheld, I.C. § 19-2604(1) gives the district court discretion to 'terminate the sentence or set aside the plea of guilty or conviction of the defendant, and finally dismiss the case and discharge the defendant.'" *Wiedmeier*, 121 Idaho at 191, 824 P.2d at 122. Thus, the district court correctly perceived that it had discretion on this matter, and we next analyze whether the district court abused its discretion when it denied the motion to dismiss. Contrary to Dieter's claim that the district court relied only on his original guilty plea, the 2011 order makes it clear that the court also relied on the 1988 psychosexual report in reaching its decision.

In a motion to dismiss, the moving party has the burden of providing evidence to persuade the court to decide in its favor. *Gurney*, 152 Idaho at 504 n.1, 272 P.3d at 476 n.1. Here, Dieter had the burden of providing enough evidence for the district court to decide that it was compatible with the public interest to dismiss. Unfortunately, Dieter provided the court with no new evidence, such as an updated psychosexual report or any other proof submitted on his

7

behalf that would explain why an interest compatible with the public interest would be served by dismissal and overcome his burden of persuasion. Contrary to Dieter's argument, the public interest prong of I.C. § 19-2604(1) is not an absolute standard that can never be met. It may however, depending on the case, take new affirmative evidence to rebut existing facts and evidence in the case file. The district court was not furnished with enough evidence to fulfill Dieter's burden of persuasion. Thus, while reliance on a 1988 report should be given minimal weight, the nature of the offense is an appropriate criterion, and the district court simply based its denial of the motion on the evidence available to it. Dieter's statements were not enough to show an interest compatible with the public interest could be served by dismissal. Therefore, the district court, based upon the facts and evidence available, acted within the bounds of its discretion, acted consistently with the choices available to it, and reached its decision by an exercise of reason. We affirm the ruling of the district court.

## V. CONCLUSION

We hold that the district court had jurisdiction and discretion to decide this case. Further, we hold that the district court's decision to deny the dismissal was not an abuse of discretion and we therefore affirm the ruling of the district court.

Justices EISMANN, J. JONES, W. JONES and KIDWELL, J., Pro Tem **CONCUR.**